Z. Kathryn Branson, Esq.
Nevada Bar No. 11540
LITTLER MENDELSON, P.C.
3960 Howard Hughes Parkway
Suite 300
Las Vegas, Nevada 89169.5937
Telephone: 702.862.8800
Fax No.: 702.862.8811
kbranson@littler.com

Attorney for Defendant
TELUS INTERNATIONAL (U.S.) CORP.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DAVID ISLAS, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>TELUS INTERNATIONAL (U.S.) CORP., a Foreign Corporation; DOES 1 Through 25, inclusive; and ROE CORPORATIONS 1 Through 25, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-02230-MDC<br><br>District Judge: Maximiliano D. Couvillier III<br><br>**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

Defendant, TELUS International (U.S.) Corp. ("TELUS" or "Defendant"), moves to compel Plaintiff David Islas' ("Plaintiff") Complaint to arbitration and stay this case according to the terms of Plaintiff's valid and enforceable arbitration agreement. There is no plausible dispute that Plaintiff (a) signed a valid and enforceable arbitration agreement that (b) unambiguously applies to his discrimination and retaliation claims. Accordingly, the Federal Arbitration Act and relevant authority require Plaintiff to comply with his long-standing agreement to arbitrate these claims. The Court should, therefore, compel this case to binding arbitration, stay this proceeding pending resolution of that arbitration, and award TELUS its reasonable fees and costs for having had to file this motion in light of (1) TELUS's attempt to resolve this without the need for judicial intervention; (2) Plaintiff's unreasonable and unjustified opposition to clear and unequivocal

evidence of his annual acknowledgment and agreement to arbitrate any claims arising out of his employment, subject to exceptions not applicable to this case; and (3) a contractual agreement that fees expended pursuing this action in a forum other than arbitration be borne by the party pursuing the action in that forum.

## I. INTRODUCTION

On June 10, 2019, February 25, 2021, August 16, 2021, and again on September 2, 2022, Plaintiff signed a valid, enforceable, and mutual agreement to arbitrate all claims covered by the Mutual Agreement to Arbitrate Claims (the "Agreement"). *See* **Arbitration Agreement**, attached as **Exhibit A**. The Agreement between Plaintiff and Defendant unambiguously requires arbitration of all claims asserted in Plaintiff's Complaint. As discussed below, the Agreement is a valid and enforceable contract and requires the Court to compel arbitration.

Rather than initiate arbitration, however, Plaintiff filed his Complaint in Court. *See* **ECF No. 1**, **Exhibit B** ("Compl."). Notably, TELUS's counsel immediately contacted Plaintiff's counsel and suggested the parties stipulated to remove the case to arbitration to preserve fees, cost, and for judicial economy. In response, Plaintiff's counsel requested a copy of the Agreement – which was immediately provided – and requested time to discuss with Plaintiff. TELUS's counsel provided Plaintiff with over two weeks to consider the Agreement. During this time, TELUS's counsel was forced to follow-up multiple times with Plaintiff's counsel regarding stipulating to remove the case to arbitration and/or Plaintiff's position on the issue. Eventually, Plaintiff responded that he would not stipulate to remove the case to arbitration and when asked why, responded simply that they would fight the present Motion. Ultimately, Plaintiff never provided a reason for refusing to remove the case to arbitration. *See* **E-mails Between Counsel**, attached as **Exhibit B**.

Although TELUS is without the benefit of Plaintiff's reasoning (or lack thereof) as to why he refuses to proceed in arbitration despite his annual agreement to do so, as discussed more thoroughly infra, Plaintiff's claims are unequivocally subject to arbitration per the Agreement, and the parties are required to arbitrate any such disputes rather than resolve them in court. Pursuant to the Agreement, Nevada's Uniform Arbitration Act of 2000, and the Federal Arbitration Act, 9

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

U.S.C. §§ 3 and 4, Defendant requests the Court issue an order compelling Plaintiff to arbitrate his claims.

The Federal Arbitration Act, 9 U.S.C. §§ 3, 4, and Nevada's Uniform Arbitration Act of 2000, compel Plaintiff to arbitrate his claims. Accordingly, TELUS asks the Court to grant its motion to compel arbitration and stay this case pending the arbitration proceedings. TELUS further asks the Court to award the reasonable attorney's fees and costs associated with preparing, filing, and arguing this motion, which could have been avoided had Plaintiff honored his arbitration obligations from the start.

## II. STATEMENT OF FACTS

Plaintiff was hired in July 2019. Compl., Par 12. Upon being hired by Defendant, Plaintiff received his Employment Handbook, which contained the provision titled "Mutual Agreement to Arbitrate Claims." **Ex. A**[1]. Plaintiff acknowledged he received, read, and understood this provision by executing his Handbook Acknowledgement on June 10. 2019, February 25, 2021, August 16, 2021, and September 2, 2022. *See* **Handbook Acknowledgment**, attached hereto as **Exhibit C**. Notwithstanding this, on October 22, 2024, Plaintiff filed a Complaint in the District Court, Clark County, Nevada, alleging the following two causes of action against TELUS International (U.S.) Corp: (1) disability discrimination pursuant to NRS 613.330 and (2) retaliation. *See generally*, Compl.

However, the parties agreed in the Agreement to submit to arbitration any alleged violation of federal, state and/or local laws and statutes including, but not limited to, discrimination claims arising under state laws and claims based on any purported breach of duty arising in tort, including violations of public policy. *See* **Ex. A**. Plaintiff signed the acknowledgment thereby agreeing that any claims wherein he asserts discrimination and/or violations of public policy, such as the claims he has alleged here, would be settled by final and binding arbitration before a neutral arbitrator rather than in court. ***Id***.; *see also* **Ex. C**. Moreover, the document contains a bold waiver providing the following:

[1] Defendant has only attached the relevant portions of the employe handbook as Exhibit A for ease. Defendant has provided Plaintiff's counsel with the complete employee handbook.

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

> **I understand that by submitting my electronic acknowledgment that I have carefully read this Agreement and that I understand its terms. I understand that, by submitting my electronic acknowledgment, both the Company and I are giving up any right we may have to a jury trial on all claims we may have against each other**.

**Ex. A**. (emphasis in original). Pursuant to this waiver, Plaintiff was aware that by executing the Agreement, he was waiving his right to have any claims against Defendant allegedly arising out of his employment with Defendant heard by a court and/or a jury. The Company waived that same right.

The Agreement expressly covers claims such as those being brought by Plaintiff. The Agreement provides:

> To the maximum extent allowed by law, the Company and I mutually consent to the resolution by binding arbitration of all claims or causes of action, except as provided below, that the Company may have against me or that I may have against the Company under any federal, state or local law including, but not limited to: claims for breach of any contract or covenant; tort claims; **claims for discrimination or harassment of any kind under law; claims for retaliation**; claims for violation of public policy; claims for unpaid wages or other wage claims including, but not limited to, claims for overtime pay, meal and rest periods, pay stub violations, minimum wage, back wages, sick leave and vacation leave; **claims for violation of any** federal, **state**, local or other **law, statute, regulation or ordinance**, including, but not limited to, all claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination i n Employment Act of 1967, as amended, the Americans with Disabilities Act of 1990, as amended, the Fair Labor Standards Act, the Equal Pay Act, the Family and Medical Leave Act and any applicable state laws.

***Id***. (emphasis added). Plaintiff's claims arise from alleged discrimination under Nevada state discrimination and retaliation laws. And both claims are therefore subject to the parties' agreement to arbitrate such disputes.

Moreover, the Agreement further provides the claims that are excluded from arbitration, including: (1) claims for benefits under Workers' Compensation and (2) claims for benefits under unemployment compensation. ***Id***. None of those claims are subjects of the instant lawsuit. By filing his instant lawsuit, and thereafter considering TELUS's inquiries to stipulate to remove to arbitration and refusing to do so, without reason (*see* **Ex. B**), Plaintiff has unequivocally stated his refusal to arbitrate his claims. Defendant is entitled to an award the reasonable attorney's fees and costs associated with preparing, filing, and arguing this motion per the Agreement, which states,

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

"Should either party to this Agreement pursue any arbitrable dispute by any method other than arbitration, the other party shall recover from the initiating party all damages, costs, expenses and attorneys' fees incurred as a result of such action or proceeding." **Ex. A**.

Such conduct constitutes a refusal to arbitrate under the FAA. See, e.g., In Re Cintas Corp. Overtime Pay Arbitration Litig., 2007 U.S. Dist. LEXIS 5479, *39 (N.D. Cal. Jan 9, 2007) (holding that the plaintiff's decision to join a lawsuit rather than pursuing arbitration constitutes a refusal to arbitrate). Because of this, the FAA requires an order compelling arbitration on Plaintiff's claims, and Defendant's Motion should be granted.

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") codifies a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)). Under the FAA, a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2013). In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). The congressional purpose was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 22. For that reason, "courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *See Concepcion*, 563 U.S. at 339 (internal citations omitted).

The FAA and Nevada law[2] allow a party to obtain an order compelling arbitration in the absence of a stipulation to that effect. *See* 9 U.S.C. § 4 (permitting a party "aggrieved by the alleged

[2] Nevada has adopted the Uniform Arbitration Act of 2000 ("UAA"), NRS 38.206–38.248, which favors efficient and expeditious enforcement of agreements to arbitrate. *See* NRS 38.219; *D.R. Horton, Inc. v. Green,* 96 P.3d 1159, 1162 (Nev. 2004). NRS 38.219(1) expresses Nevada's fundamental policy favoring the enforceability of arbitration agreements. Similar to § 2 of the FAA, 9 U.S.C. § 2 (2013), the UAA provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except . . . upon a ground that exists at law or in equity for the revocation of the contract." NRS 38.219(1). "As a matter of public policy, Nevada courts encourage arbitration and liberally construe arbitration clauses in favor of granting arbitration."

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

failure, neglect, or refusal of another to arbitrate under a written agreement" to obtain an order compelling arbitration "in the manner provided for in such agreement"); *see also* Nev. Rev. Stat. § 38.221(1)(b) ("On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement[,] . . . the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate."); *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 1072, 1075 (C.D. Cal. 2007) ("Federal courts must order parties to proceed to arbitration if there has been a failure, neglect, or refusal to honor an agreement to arbitrate.") (citations and internal quotation marks omitted). Indeed, consistent with the strong federal and state policies favoring arbitration, courts have dismissed actions subject to arbitration under Rule 12(b)(1) to allow the parties to litigate in the proper forum. *See BAC Home Loans Servicing, LP v. Stonefield II Homeowners* Ass'n, No. 2:11-CV-167 JCM RJJ, 2011 WL 2976814, at *3 (D. Nev. July 21, 2011) (granting motion to dismiss and compel arbitration under Rule 12(b)(1)).

Furthermore, the "FAA applies to contracts 'evidencing a transaction involving [interstate] commerce.'" *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 38 (Nev. 2018) (quoting 9 U.S.C. § 2 (2012)). "The word 'involving' in the FAA is broad and functionally equivalent to the word 'affecting' for purposes of determining the FAA's reach." *Id.* (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274–75 (1995) (applying FAA to dispute between pest-control company and homeowner due to company's multi-state presence and fact that company supplies traveled across state lines)). "Even contracts evidencing intrastate economic activities are governed by the FAA if the activities, when viewed in the aggregate, 'substantially affect interstate commerce.'" *Id.* (quoting *United States v. Lopez,* 514 U.S. 549, 556 (1995)). Indeed, the United States Supreme Court has made clear that the FAA applies to employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001).

---

*State ex rel. Masto v. Second Jud. Dist. Ct. ex rel. County of Washoe*, 199 P.3d 828, 832 (Nev. 2009).

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

## IV. ARGUMENT

### A. Plaintiff's Claims Must be Compelled to Arbitration Because Arbitration Agreements are Strongly Favored and Broadly Construed.

Under NRS 38.219(1), a written agreement "to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except as otherwise provided in NRS 597.995 or upon a ground that exists at law or in equity for the revocation of a contract." In addition to recognizing the strong public policy in favor of enforcing arbitration agreements, *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004), the Nevada Supreme Court holds that employment claims are arbitrable. *Kindred v. Second Judicial Court*, 996 P.2d 903, 908 (Nev. 2000).

Here, the agreement to arbitrate between Plaintiff and Defendant states:

> To the maximum extent allowed by law, the Company and I mutually consent to the resolution by binding arbitration of all claims or causes of action, except as provided below, that the Company may have against me or that I may have against the Company under any federal, state or local law including, but not limited to: claims for breach of any contract or covenant; tort claims; **claims for discrimination or harassment of any kind under law; claims for retaliation**…

**Ex. A** (emphasis added). Plainly, the two employment claims contained in Plaintiff's Complaint are covered by the parties' agreement to arbitrate employment claims. And any remedy the parties have can only be pursued in arbitration.

The terms of the Arbitration Agreement specifically state that the Agreement is governed by the FAA. Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. at § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Coleman v. Assurant*, 2007 U.S. Dist. LEXIS 87829, **4, 508 F. Supp. 2d 862, 865 (D. Nev. 2007) (*quoting Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Indeed, the FAA, which applies in both federal and state courts, establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (noting that the FAA applies in both state and federal courts).

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

Congress enacted the FAA to overcome court reluctance to enforce agreements to arbitrate. *See Allied-Bruce Terminix Cos v. Dobson*, 513 U.S. 265, 270, 115 S.Ct. 834, 838 (1995). The FAA not only placed agreements to arbitrate on equal footing with other agreements, but also established a federal policy in favor of arbitration. *Portland General Elec. Co. v. U.S. Bank Trust Nat'l Assoc.*, 218 F.3d 1085, 1091 (9th Cir. 2000) (*quoting Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 857 (1984)). This policy is so significant that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

In *Rent-A-Center West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010), the United States Supreme Court reiterated its long line of cases upholding agreements to arbitrate. That case originated in the District of Nevada, which properly enforced the agreement. *Rent-A-Center West, Inc. v. Jackson*, 2007 U.S. Dist. LEXIS 99067 (D. Nev. June 7, 2007). Among the core concepts addressed in Rent-A-Center West v. Jackson was the requirement that arbitration agreements be "enforce[d] according to their terms." *Rent-A-Center West*, 130 S. Ct. at 2776. Here, Plaintiff's claims are unquestionably covered by the parties' agreement to arbitrate.

Consistent with the public policy favoring arbitration, the parties' agreement to arbitrate is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; NRS 38.219. The Court should therefore find as a matter of law that Plaintiff must bring such claims, if at all, before an arbitrator in accordance with the terms of the Agreement. *See AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 657 (1986) (holding that "only the most forceful evidence" can show that the parties intended to exclude certain causes of action); *Philips v. Parks*, 106 Nev. 415, 417 (1990) (stating that "courts are not to deprive the parties of the benefits of arbitration they have bargained for, and arbitration clauses are to be construed liberally in favor of arbitration.")

**B. To the extent the Court questions arbitrability of Plaintiff's claims, this issue must be decided by an arbitrator.**

When presented with a motion to compel arbitration, the Court generally only addresses two "gateway" issues of arbitrability: (1) whether there is an agreement to arbitrate, and (2) whether the agreement covers the dispute. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

(*quoting Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). However, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 528 (2019); *see also Principal Investments v. Harrison*, 366 P.3d 688, 694 (Nev. 2016). Whether the Parties agreed to submit initial arbitrability issues to the arbitrator is a threshold issue for the Court to decide.

Under the FAA[3], "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (*citing Howsam*, 537 U.S. at 83–85; *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). An "'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Henry Schein*, 139 S. Ct. at 539 (*quoting Rent-A-Center*, 561 U.S. at 70). The Ninth Circuit has unequivocally held that "incorporation of the [AAA] rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.

Here, the Parties expressly agreed to submit all "claims or causes of action" to arbitration. **Ex. A**. Then, the Parties agreed that any arbitration would be subject to the Employment Arbitration Rules and Procedures of the Judicial Arbitration and Mediation Services, Inc. ("JAMS"). *Id.* The JAMS Employment Arbitration Rules, in turn, provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." And that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *See* **JAMS Emp. Arb.**

[3] It is beyond dispute that the FAA applies to the Agreement per its express terms and the U.S. Supreme Court's directive that the FAA applies to non-transportation worker employment contracts affecting interstate commerce. *See Circuit City Stores, Inc.*, 532 U.S. at 105; *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 55–56 (2003) ("We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.") (internal citations omitted).

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

**Rule 11**, attached as **Exhibit D**. The Agreement's incorporation of JAMS's arbitrability rules "constitutes clear and unmistakable evidence" that the Parties agreed to arbitrate the threshold issue of arbitrability. *Brennan*, 796 F.3d at 1130. Accordingly, the issues of whether an enforceable arbitration agreement exists, and whether it applies to Plaintiff's claims, should be decided by the arbitrator. *See Worldwide Film Productions, LLC v. JPMorgan Chase Bank, N.A.*, CV 19-10337-DSF (JPRx), 2020 WL 2730926, at *2–*3 (C.D. Cal. Mar. 13, 2020).

This Court should similarly find that the Parties expressly entrusted the threshold arbitrability issue to the arbitrator. This alone warrants granting TELUS's motion to compel arbitration. Nevertheless, should the Court reach the issues of arbitrability, they also weigh in favor of compelling arbitration.

**C. The Agreement is valid and enforceable.**

Next is whether Plaintiff's Agreement is valid and enforceable. *Brennan*, 796 F.3d at 1130. Here, Plaintiff knowingly and voluntarily entered into the Agreement with TELUS. The Agreement provided Plaintiff the opportunity to opt out, which he did not do, and was supported by valuable consideration. **Ex. A and C**. Plaintiff signed the Agreement on June 10. 2019, February 25, 2021, August 16, 2021, and September 2, 2022, and his signature represented the "knowing[] and voluntar[y]" agreement to the terms and conditions therein. **Ex. C**.

It is well established that the Agreement's mutuality and Plaintiff's continued employment after signing the Agreement demonstrate his consent to the Agreement and the sufficiency of its consideration. *See Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) ("Where an employee continues in his or her employment after being given notice of the changed terms or conditions, he or she has accepted those new terms and conditions."); *Taleb v. AutoNation USA Corp.*, No. CV06-02013-PHX-NVW, 2006 WL 3716922, at *5 (D. Ariz. Nov. 13, 2006) ("[F]ederal courts do not hesitate to find an enforceable agreement to arbitrate when an arbitration policy is instituted during an employee's employment and the employee continues to work for the employer thereafter."); *Zabelny v. CashCall, Inc.*, No. 2:13-cv-00853-PAL, 2014 WL 67638 (D. Nev. Jan. 8, 2014) (recognizing Nevada Supreme Court has held that an employee's continued employment after a modification of its terms constitutes consideration and that Ninth Circuit has

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

held an employer's promise to be bound by arbitration agreement serves as adequate consideration) (*citing Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 105 (Nev. 2008) and *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002)); *Vedachalam v. Tata America Intern. Corp.*, Nos. 07-15504, 08-15521, 339 Fed. Appx. 761, *2 (9th Cir. 2009) (*citing Demasse v. ITT Corp.*, 111 F.3d 730, 734-35 (9th Cir. 1997) (holding "a promise of continued employment may constitute consideration sufficient to support an at-will employee's promise to submit claims to arbitration.")). Because the Agreement is valid and enforceable, it must be enforced according to its terms.

**D. The Agreement covers each of Plaintiff's claims.**

Having demonstrated that Plaintiff's Agreement is valid and enforceable, TELUS need only show that the Agreement covers all of Plaintiff's claims for relief. *See Brennen*, 796 F.3d at 1130. It does. The Agreement plainly encompasses claims arising from discrimination and/or retaliation. As noted above, the Agreement provides:

> Included Claims
>
> To the maximum extent allowed by law, the Company and I mutually consent to the resolution by binding arbitration of all claims or causes of action, except as provided below, that the Company may have against me or that I may have against the Company under any federal, state or local law including, but not limited to: claims for breach of any contract or covenant; tort claims; **claims for discrimination or harassment of any kind under law; claims for retaliation**; claims for violation of public policy; claims for unpaid wages or other wage claims including, but not limited to, claims for overtime pay, meal and rest periods, pay stub violations, minimum wage, back wages, sick leave and vacation leave; **claims for violation of any** federal, **state**, local or other **law, statute, regulation or ordinance**, including, but not limited to, all claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination i n Employment Act of 1967, as amended, the Americans with Disabilities Act of 1990, as amended, the Fair Labor Standards Act, the Equal Pay Act, the Family and Medical Leave Act and any applicable state laws.

**Ex. A** (emphasis added).

Plaintiff's claims arise from discrimination and retaliation. *See* **Compl.** ¶¶ 34-52. As a result, they are included in the Agreement and must be arbitrated. Indeed, Plaintiff's Agreement expressly covers employment-retaliation claims and wage claims. Accordingly, each of Plaintiff's claims fall within the scope of the Agreement and must be compelled to final and binding arbitration.

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

**E. Plaintiff's refusal to promptly acknowledge his plain obligations under the Agreement warrant an award of fees and costs.**

TELUS attempted to avoid costly and unnecessary motion practice, but Plaintiff has refused to acknowledge the validity of the Arbitration Agreement. In so doing, Plaintiff unnecessarily delayed arbitration, wasted the Court's and Parties' resources with needless briefing, and ignored the FAA's presumption in favor of arbitration. Whereas TELUS earnestly engaged in efforts to avoid this motion, Plaintiff and his counsel refused to stipulate to arbitration despite have over two weeks to review the Agreement. **Ex. B**. Worse, Plaintiff lacks any reasonable basis to contest the Agreement and failed to provide his justification for refusing to stipulate. ***Id***. Thus, his refusal constitutes mere obstructionism, which should not be rewarded. The Court should, therefore, award TELUS its fees and costs in bringing this Motion.

The Court enjoys broad discretion to award attorney's fees to TELUS. This is especially the case where a losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975). The Ninth Circuit, District of Nevada, and Nevada Supreme Court have each awarded or upheld fee awards against parties who refuse to submit a dispute to arbitration or mediation frivolously, or in bad faith, under a valid agreement to do so. *See UFCW, Locals 197 & 373 v. Alpha Beta Co.*, 736 F.2d 1371, 1383 (9th Cir. 1984) (affirming award of attorney's fees to the party who prevailed on a motion to compel arbitration); *Int'l Union of Painters Allied Trades Dist. Council Local No. 15 v. Diversified Flooring Specialist, Inc.*, No. 2:06-cv-00358-RLH-PAL, 2007 WL 923936 (D. Nev. Mar. 23, 2007) (awarding attorney's fees to the party who prevailed on a motion to compel arbitration); *MB Am., Inc. v. Alaska Pac. Leasing Co.*, 367 P.3d 1286, 1290, 1292 (Nev. 2016) (affirming award of attorney's fees under NRS § 18.010 where the court dismissed plaintiff's complaint due, in part, to plaintiff's failure to comply with the prelitigation mediation provisions in the relevant contract that precluded the initiation of litigation).

Further, Defendant is entitled to an award the reasonable attorney's fees and costs associated with preparing, filing, and arguing this motion per the Agreement. The Agreement specifically states, "[s]hould either party to this Agreement pursue any arbitrable dispute by any method other

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

than arbitration, the other party shall recover from the initiating party all damages, costs, expenses and attorneys' fees incurred as a result of such action or proceeding." **Ex. A**. As such, Defendant is entitled to an award the reasonable attorney's fees and costs based on the Agreement alone.

An award of fees is warranted here as TELUS tried diligently to facilitate a stipulation to arbitrate these claims before bringing this motion and in accordance with the Agreement which specifically provides for the award of fees and costs. Furthermore, TELUS anticipates that it will also be forced to prepare reply briefing and possibly oral argument, which will both incur additional time and fees. Plaintiff's refusal to submit his claims to arbitration is unjustified, frivolous, obstructionist, and in bad faith. When asked to provide the basis for Plaintiff's refusal to submit to arbitration, Plaintiff's counsel failed to provide any, nor is there any valid basis to do so. Accordingly, TELUS asks that the Court award reasonable attorney's fees and costs associated with compelling this case to arbitration.

## V. CONCLUSION

For the reasons above, TELUS asks the Court to compel Plaintiff's claims to binding arbitration and dismiss this case with prejudice. TELUS additional requests an award of reasonable attorney's fees and costs incurred in bringing this motion and compelling this case to its proper arbitral forum pursuant to the parties' Agreement, Plaintiff's failure to act reasonably and applicable case law.

Dated: December 18, 2024

LITTLER MENDELSON, P.C.

Zoe K Branson

Z. Kathryn Branson, Esq.

Attorney for Defendant
TELUS INTERNATIONAL (U.S.) CORP.

LITTLER MENDELSON, P.C.
3960 Howard Hughes Pkwy
Suite 300
Las Vegas, NV 89169.5937
702.862.8800

**PROOF OF SERVICE**

I am a resident of the State of Nevada, over the age of eighteen years, and not a party to the within action. My business address is 3960 Howard Hughes Parkway, Suite 300, Las Vegas, NV 89169. On December 18, 2024, I served the within document(s):

**DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

☒ by serving the following parties electronically through CM/ECF.

Patrick W. Kang, Esq.
Kyle R. Tatum, Esq.
Paul H. Wolfram, Esq.
KANG & ASSOCIATES, PLLC
6480 W. Spring Mountain Rd, Suite 1
Las Vegas, NV 89146
Phone: 702.333.4223
Fax: 702.507.1468
pkang@acelawgroup.com
filing@acelawgroup.com

Attorneys for Plaintiff
DAVID ISLAS

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 18, 2024, at Las Vegas, Nevada.

*/s/ Maribel Rodriguez*
Maribel Rodriguez

4917-7725-2871.2 / 098858-1022