**PATRICK W. KANG, ESQ.**
Nevada Bar No.: 10381
**KYLE R. TATUM, ESQ.**
Nevada Bar No.: 13264
**PAUL H. WOLFRAM, ESQ.**
Nevada Bar No.: 16025
**KANG & ASSOCIATES, PLLC**
6480 West Spring Mountain Road, Suite 1
Las Vegas, Nevada 89146
P: 702.333.4223
F: 702.507.1468
*Attorneys for Plaintiff*

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| DAVID ISLAS, an Individual;<br><br>Plaintiff,<br><br>vs.<br><br>TELUS INTERNATIONAL (U.S.) CORP, a Foreign Corporation; DOES 1 Through 25, inclusive; and ROE CORPORATIONS 1 Through 25, inclusive,<br><br>Defendants. | Case No.: 2:24-cv-002230<br><br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br><br>Oral Argument Requested |

[1]

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

COMES NOW, Plaintiff, DAVID ISLAS, by and through his attorneys of records, PATRICK W. KANG, ESQ.; KYLE R. TATUM, ESQ.; and PAUL H. WOLFRAM, ESQ., of the law firm KANG & ASSOCIATES and hereby submits their Opposition to Defendant's Motion to Compel Arbitration.

This Opposition to the Defendant's Motion is made based upon the attached points and authorities, paper, and pleadings on file herein, as well as any oral argument deemed necessary.

Dated this __30th__ Day of December, 2024.

KANG & ASSOCIATES, PLLC

/s/*Paul H. Wolfram, Esq.*
**PATRICK W. KANG, ESQ.**
Nevada Bar No.: 10381
**KYLE R. TATUM, ESQ.**
Nevada Bar No.: 13264
**PAUL H. WOLFRAM, ESQ.**
Nevada Bar No.: 16025
**KANG & ASSOCIATES, PLLC**
6480 W. Spring Mtn Rd, Ste 1
Las Vegas, Nevada 89146
P: 702.333.4223
F: 702.507.1468
*Attorneys for Plaintiff*

[2]

**POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION**

**I.**

**SUMMARY OF FACTS**

This matter arises from Plaintiff's employment with the Defendant. Plaintiff alleges that, over the course of his employment with the Defendant, he was subjected to discriminatory and retaliatory actions based upon his disability and reasonable requests for accommodations. Plaintiff further alleges that he was ultimately discriminatorily and/or retaliatorily terminated from his employment.

At various points throughout Plaintiff's employment with the Defendant, he was provided with the Telus International Team Member Handbook. **Exhibit 1.** Plaintiff also acknowledged receipt of the handbook multiple times throughout his employment, and most recently on September 2, 2022. **Exhibit 2 – Acknowledgment.** The Handbook is 106 pages long and covers over 60 different topics, from Telus's company values, to dress code, to work from home policies, to at issue here, arbitration. The arbitration provision does not begin until page 101 of 106. **Exhibit 1 at TELUS000101.** Plaintiff contends the arbitration provision as written, and as presented to Mr. Islas is unconscionable, and therefore, unenforceable. Additionally, or alternatively, the provision is void under Nevada law.

**III.**

**LAW AND ARGUMENT**

Public policy favors arbitration. Nonetheless, courts may invalidate arbitration agreements when appropriate. The Federal Arbitration Act ("FAA") and Nevada law state an arbitration agreement is enforceable "save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2022); NRS 38.219.

Courts have consistently recognized that when a contract is unconscionable, it is unenforceable. However, "both procedural and substantive unconscionability must be present in

[3]

order for a court to exercise its discretion to refuse to enforce a contract or [arbitration] clause as unconscionable." *Burch v. Second Judicial Dist. Court,* 118 Nev. 438 443 (2002). "Unconscionability refers to 'an absence *of meaningful choice* on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Ingle v. Circuit City Stores, Inc.*, 328 F. 3d 1165, 1170 (9th Cir. 2003) (*citing A & M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 486, 186 Cal. Rptr. 114 (1982))*(emphasis Added)*. Thus, a contract to arbitrate is unenforceable under the doctrine of unconscionability when there is "both a procedural and substantive element of unconscionability." *Id. citing Ferguson,* 298 F.3d at 783; *accord Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000). Unconscionability is evaluated on a sliding scale: if one type of unconscionability is greater, the other may be lesser. *Burch,* 118 Nev. at 444; *see also D.R. Horton, Inc. v. Green,* 120 Nev. 549, 554 (2004)("[L]ess evidence of substantive unconscionability is required in cases involving great procedural unconscionability.")(*overruled on other grounds*).

## A. The Arbitration Provision is Procedurally Unconscionable

An arbitration agreement is "procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton, Inc. v. Green,* 120 Nev. 549, 554 (2004)(*overruled on other grounds by U.S. Home Corp. v. Michael Ballestros Tr.,* 134 Nev. 180, 190-91 (2018)); *see also Neal v. State Farm Ins. Cos.*, 188 Cal.App.2d 690, 694 (1961)("The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relates to the subscribing party only the opportunity to adhere to the contract or reject it"). While the Nevada Supreme Court has declined to apply the unconscionable adhesion contract doctrine to employment contract cases, it is premised on the fact that such

[4]

contracts can generally be negotiated. *See Kindred v. Second Jud. Dist. Ct.,* 116 Nev. 405, 411 (2000). Further, if contract terms are "inconspicuous—that is, if the arbitration is in fine print, or 'buried in and endnote or exhibit'—then the agreement may be procedurally unconscionable." *CVSM, LLC v. Doe Dancer V*, 135 Nev. 633 (2019)(unpublished)(*citing U.S Home Corp,* 134 Nev. Adv. Op. 25). "A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract." *Id. at 71 citing Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 1532, 60 Cal.Rptr.2d 138, 145 (1997).

Here, there exists a substantial inequity of bargaining power between the Plaintiff and the Defendant. Plaintiff was presented with an employee handbook, containing over 100 pages of policies and procedures which guided his work-life.[1] Defendant conveniently omits the full handbook from its exhibits and motion. The handbook specifically states that none of the policies create an employment contract nor contractual obligations "except the agreement to arbitrate." **Exhibit 1 at TELUS000104.** To get to the only binding portion of the entire handbook, the employee must first sift through 100 pages of other policies and procedures which are completely non-binding, which is further reinforced by repeated assertions that the handbook does not modify the "at-will" status of the employee. Even more procedurally unconscionable, to be bound by the arbitration provision, Plaintiff needed only to acknowledge receipt of the handbook. **Exhibit 2 at TELUS000110.**

Additionally, the Plaintiff was required to sign the acknowledgment, without ever being informed of the binding language included in the handbook. In other words, Plaintiff was provided with no means of bargaining and was forced to agree to the arbitration provision through mere acknowledgment. Contrary to Defendant's assertion in its motion, Mr. Islas was not given any option to opt out of the mandatory, binding arbitration provision. Nowhere in the

---

[1] The handbook is so lengthy, it exceeds the length of exhibits which may be submitted to the court electronically. LR IA 10-3(i). In accordance with local rules, a separately bound appendix will be delivered to the Court.

KANG & ASSOCIATES, PLLC.
6480 W SPRING MOUNTAIN RD., STE 1
LAS VEGAS, NV 89146

entirety of the handbook, or his acknowledgment is he ever informed of or provided with that option. In fact, it is clear he was given no opportunity to negotiate terms whatsoever. He was also never required to provide direct, affirmative assent to the arbitration provision, only acknowledge receipt of the entirety of the 106-page handbook. **Exhibit 2.**

Similarly, there is nothing about the arbitration provision which is different from the other 104 pages to demonstrate that this provision is binding and affects Plaintiff's rights. Rather, it is formatted the same as other provisions such as "General Housekeeping Guidelines" (TELUS00018) and "Timekeeping Compliance" (TELUS000064). The binding term of the arbitration agreement is camouflaged and placed at the end of a hundred other pages which do not contractually bind nor substantively affect Plaintiff's rights.

A similar issue of an arbitration provision in the employment setting has been previously addressed by the Ninth Circuit. In *Ingle v. Circuit City Stores, Inc.* the plaintiff was presented with an arbitration agreement at the commencement of her employment with Circuit City. The Court analyzed the validity of such a contract and stated the following:

> Circuit City, which possesses considerably more bargaining power than nearly all of its employees or applicants, drafted the contract and uses it as its standard arbitration agreement for all of its new employees. The agreement is a prerequisite to employment, and job applicants are not permitted to modify the agreement's terms — they must take the contract or leave it…. Because of the stark inequality of bargaining power between Ingle and Circuit City, we conclude that Circuit City's 1998 arbitration agreement is also procedurally oppressive… when a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, "oppression and, therefore, procedural unconscionability, are present." 328 F.3d 1165, 1173 (9th Cir. 2003).

The arbitration provision here was one of many pages of a non-binding employee handbook that the Plaintiff was required to merely acknowledge receipt of. Plaintiff had no ability to negotiate the only binding, contractual provision contained in 106 pages of policies and

[6]

KANG & ASSOCIATES, PLLC.
6480 W SPRING MOUNTAIN RD., STE 1
LAS VEGAS, NV 89146

procedures. There is also no indication that, by acknowledging receipt of the employee handbook, Plaintiff was made aware he was bound only by less than 3% of its contents.

Finally, as unconscionability is evaluated "as of the time [the contract] was made," it is important to note the physical condition of Plaintiff at the time he acknowledged the contract. *A & M Produce Co. v. FMC Corp.,* 135 Cal.App.3d 473, 487 (1982). At the time Plaintiff acknowledged receipt of the handbook, and thus "binding" himself to arbitration, he had requested temporary leave 18 times between April of 2022 and his acknowledgment of the handbook in September. **Exhibit 3 – Denial of Leave.** Despite Defendant knowing of Plaintiff's substantial health problems, he was merely provided an arbitration agreement, asked to acknowledge receipt of it, without any further explanation that he was being bound by that same acknowledgement. Procedural unconscionability is clear here.

### B.   The Arbitration Provision is Substantively Unconscionable

Substantive unconscionability concerns the "contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy." *8 Williston on Contracts* at § 18:10. Substantive unconscionability centers on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney v. United Healthcare Servs., Inc.,* 70 Cal. App.4th 1322, 1330 (1999).

While the agreement is a "mutual agreement" to arbitrate, the claims covered by the agreement demonstrate that the provision is provided primarily to limit the employee's ability to bring claims against the employer before a district court. *See* **Exhibit 1 at TELUS000101** (Claims Covered by this Agreement). In fact, nearly every single claim specifically identified within the arbitration provision can only be brought by an employee against their employer. This is further made clear as the provision regarding "Arbitration Fees and Costs" only mentions claims which are initiated by the employee. It is entirely silent as to costs based on the remote

KANG & ASSOCIATES, PLLC.
6480 W SPRING MOUNTAIN RD., STE 1
LAS VEGAS, NV 89146

chance the Company initiates any claim against a current or former employee. **Id. at TELUS000103** (<u>Arbitration Fees and Costs</u>). The *Ingle* court found these types of "mutual agreements" to be substantively suspect:

> This case presents a broad concern with respect to arbitration agreements between employers and employees. Circuit City argues that the arbitration agreement subjects Circuit City to the same terms that apply to its employees. But this argument is "exceedingly disingenuous," because the agreement is one-sided anyway. Because the possibility that Circuit City would initiate an action against one of its employees is so remote, the lucre of the arbitration agreement flows one way; the employee relinquishes rights while the employer generally reaps the benefits of arbitrating its employment disputes.

> The only claims realistically affected by an arbitration agreement between an employer and an employee are those claims employees bring against their employers. By essentially covering only claims that employees would likely bring against Circuit City, this arbitration agreement's coverage would be substantively one-sided even without the express limitation to claims brought by employees.

Similarly, it must be noted again that the arbitration provision makes up less than 3% of the entire employee handbook. By acknowledging receipt of the entire handbook, the employee agrees that their "continued employment constitutes acceptance of any changes that may be made in the content or application of the handbook." **Id at TELUS000104.** The employee similarly agrees to "read, understand, and adhere to TELUS International policies" without imposing a reciprocal obligation upon the Company. **Id.** Again, not only does the employee agree to such adherence by the mere acknowledgment of receipt, but the agreement flows one way: the employee is bound to adhere to all company policies, while the Company is not, because no employment contract is made, and the Company retains the sole discretion to supplement, revise, or rescind any provision at any time, without notice to the employee. **Id.** The entire handbook, and attempts to bind an employee to it, is borne out of substantive unconscionability, as it is vastly one-sided.

Further, the arbitration provision specifically is so overly broad, that it attempts to confine *any* dispute between a current or former employee and any other "current and former

[8]

KANG & ASSOCIATES, PLLC.
6480 W SPRING MOUNTAIN RD., STE 1
LAS VEGAS, NV 89146

owners, partners, members, officers, directors, employees, representatives and agents, all parent companies, subsidiaries and affiliated entities, all benefit plans and benefit plan sponsors, fiduciaries, administrators, and all successor and assigns of them" to arbitration, even if the dispute has no bearing to a current or former employment relationship. **Id at TELUS000101.** The provision is written so the broadly defined "Company" could compel arbitration in almost any circumstance. Instead of being limited to matters which arise out of the employment relationship, a former employee could be compelled to arbitrate if they slip and fall on their way into the office to pick up their final check, or if the CEO hits them in rush hour traffic. This broad construction overwhelmingly favors the employer, the party with the greater bargaining power, and deprives a current or former employee from utilizing the courts for any reason which may be adverse to the Company (or its individual officers, directors, agents, etc.) for an indefinite period of time.[2]

The arbitration provision similarly attempts to inappropriately shift the cost of the arbitration to the employee. While the employee will only be required to pay an arbitration fee to initiate arbitration equal to a court filing fee, the Company will only pay costs in excess of such a court proceeding "if a judgment is obtained against the Company at the conclusion of the arbitration." **Id. at TELUS000103** (Arbitration Fees and Costs). In other words, the full costs of arbitration, above the employee's "filing fee," will only be imparted upon the Company should the matter proceed to a written decision *and* if the employee prevails. Such a provision forces the employee into an "all or nothing" situation where they are motivated either to 1) resolve the case early to avoid growing arbitration specific costs or 2) take the matter all the way to an arbitration hearing, incurring additional monetary risks. *See Ingle,* 328 F.3d at 1178 (Because "fee-splitting

---

[2] Such broad provisions have become a notable topic and have "shocked the conscious" of the public recently after Disney attempted to compel arbitration based upon an arbitration provision contained in a Disney+ membership, in a wrongful death claim arising from a Disney World Resort guest's death due to an allergic food reaction at a Disney Springs restaurant. *See* Alexa Mascaro, *Is Reading the Fine Print Enough? What the Disney Wrongful Death Suit Reveals to Consumers About Arbitration Agreements,* 79 U. Miami L. Rev. 1 (2024). (Available online at https://lawreview.law.miami.edu/is-reading-the-fine-print-enough-what-the-disney-wrongful-death-suit-reveals-to-consumers-about-arbitration-agreements/)

scheme would sanction even a successful litigant for her share of arbitration costs, this scheme blatantly offends basic principles of fairness."). Even if the employee is willing to take the ultimate risk and try the matter all the way through arbitration, studies have shown that, on average, employees prevail in arbitration at a lower rate when compared to state and federal courts. *See* Katherine V.W. Stone & Alexander J.S. Colvin, *The Arbitration Epidemic,* Economic Policy Institute 414 (2015)(*see* Table 1).[3] When they do prevail, they on average recover less. *Id.* In other words, the Company has created a provision where it gets placed into a forum where it will 1) win more often, 2) lose to a lesser degree, and 3) overall, increase the costs and risks for an employee to have their claims decided.

Additionally, the two acknowledgment sentences within the arbitration agreement are intentionally deceptive. At TELUS000103, as noted in Defendant's Motion, the employee handbook contains a bolded provision that states: "I acknowledge that I have carefully read this agreement and that I understand its terms. I understand that, by signing this Agreement, both the Company and I are giving up any right we may have to a jury trial on all claims we may have against each other." **Exhibit 1.** These sentences materially mislead the reader into believing it is waiving any claim to a jury trial on all claims. Not only is this different than the arbitration language preceding it, which excludes certain claims from arbitration, it also fails to accurately represent the full scope of the acknowledgement, that an employee is waiving its right to proceed with certain claims through the courts entirely.

In a further attempt to obfuscate the issues with the arbitration provision, Defendant argues that the "Agreement provided Plaintiff the opportunity to opt out, which he did not do, and was supported by valuable consideration." *Def. Mot. to Compel at 10:13-15.* A cursory review of the Agreement and the acknowledgement page demonstrates this is patently untrue. As above, Plaintiff was merely required to acknowledge receipt of the handbook. Nowhere in the documents provided to Plaintiff was he ever given the opportunity to opt out of the binding

---

[3] Available online at https://www.epi.org/publication/the-arbitration-epidemic/#epi-toc-10

KANG & ASSOCIATES, PLLC.
6480 W SPRING MOUNTAIN RD., STE 1
LAS VEGAS, NV 89146

arbitration agreement, and he certainly was not provided any "valuable consideration" other than the benefit of keeping his job. Further, his acknowledgment of the agreement is apparently irrelevant, as his continued employment constituted acceptance of any changes which may be made. **See Id. at TELUS000104** ("I acknowledge receipt of the Team Member handbook, and understand that my continued employment constitutes acceptance of any changes that may be made in the content or application of the handbook."). Accordingly, Mr. Islas' acknowledgment or "acceptance" was rendered meaningless, as he agreed to the term through his employment alone.

The terms within the handbook generally, and the arbitration provision specifically, flow one way. The bulk of the power and benefit is given to the Company, with the employee receiving no "benefit of the bargain" aside from continued employment. Such terms when taken as a whole overwhelmingly benefit the Company, who also retains the sole discretion in the application, revision, or recission of these terms as it applies to the employee. The terms within the employee handbook bestows a windfall on the company, impairs the integrity of the bargaining process, and creates a one-sided contract which contravenes public policy, rendering it substantively unconscionable.

**C.  The Arbitration Provision is Invalid Pursuant to NRS 597.995**

*1.   The Agreement Specifically Applies Nevada Law, not the FAA*

Nevada has adopted the Uniform Arbitration Act of 2000. *See* NRS 38.206 – 38.248. Pursuant to NRS 38.219, an agreement to arbitrate is "valid, enforceable and irrevocable except as otherwise provided in NRS 597.995 or upon a ground that exists at law or in equity for the revocation of a contract." Under that section, an arbitration provision "must include specific authorization for the [arbitration] provision which indicates that the person has affirmatively agreed to the provision." NRS 597.995(1). Absent such a provision, the agreement is void and

unenforceable. NRS 597.995(2) Should the Court not find the agreement unconscionable; the Court should nonetheless invalidate the agreement as violative of NRS 597.995.

The arbitration agreement states the Agreement "is subject to and governed by the Federal Arbitration Act" and state arbitration laws "do not apply or govern this Agreement in any respect unless specifically referenced herein." **Exhibit 1 at TELUS000102** at <u>Federal Arbitration Act Governs</u>. The very next section then states "[t]his Agreement is governed by the laws in the state where the Company last employed me." **Exhibit 1 at TELUS000102** at <u>Arbitration Procedures</u>. Mr. Islas was last employed in Nevada and, accordingly, Nevada State Arbitration Laws govern this Agreement, not the FAA, pursuant to the unambiguous term in the Agreement.

The Nevada Supreme Court has "made unmistakably clear that, when the FAA applies, it preempts state laws that single out and disfavor arbitration." *United States Home Corp. v. Michael Ballesteros Trust,* 134 Nev. 180, 188 (2018). However, where the FAA does not apply, state law controls. *Maide, LLC v. DiLeo for DiLeo*, 138 Nev. 80, 82 (2022). Here, it is evident from the terms of the Agreement, that Nevada law controls, as the parties specifically contracted that the agreement would be governed by Nevada law, not the FAA. **Exhibit 1 at TELUS000102.**

While the parties could have chosen to have the contract controlled by the FAA, it exempts the FAA. Specifically, the section states that "State arbitration laws do not apply or govern this Agreement in any respect *unless specifically referenced herein."* **Id.** (emphasis added). The very next section then references and applies state law by stating the Agreement "will be governed by the laws in the state where the Company last employed me." Mr. Islas was last employed in Nevada. Accordingly, NRS 38.219 and NRS 597.995 are not pre-empted by the FAA as the parties specifically contracted to apply Nevada law to govern the Agreement and not the FAA.

"Nevada's choice-of-law principles permit parties 'within broad limits to choose the law that will determine the validity and effect of their contract.'" *Progressive Gulf. Ins. Co. v. Faehnrich*, 130 Nev. 167, 71 (2014)(*citing Ferie Sievers & Lake Tahoe Land Co. v. Diversified Mortgage Investors,* 95 Nev. 811, 815 (1979)). Therefore, the Agreement must be interpreted under Nevada law, not the FAA. *WPH Architecture, Inc. v. Vegas VP, LP,* 131 Nev. 884 (2015)(Applying Nevada substantive law to an arbitration agreement when contract stated Nevada law would govern the contract itself.). Therefore, the Court must apply Nevada law, without concerns of preemption by the FAA as the parties specifically contracted that the FAA does not govern. *See Asire v. Carson City School District,* 320CV00039RCJCBL, 2020 WL 3884423 (D. Nev. July 8, 2020), *aff'd,* 855 Fed. Appx. 414 (9th Cir. 2021)(Applying Nevada law in determining validity of arbitration agreement where FAA was inapplicable).

Here, there is no specific authorization for the arbitration provision which demonstrates Mr. Islas affirmatively agreed to the provision. Rather, the authorization page shows that Mr. Islas acknowledged receipt of the handbook and agreed to accept changes made in content or application. **Exhibit 2.** Absent this specific authorization, the arbitration provision is "void and unenforceable." NRS 597.995(2).

2. *Alternatively, The FAA Does Not Apply, and the Court Must Apply Nevada State Law*

Alternatively, the FAA is inapplicable to the agreement. The FAA's applicability is borne from Congress' powers to regulate interstate commerce; therefore, the FAA only applies to contracts evidencing a transaction involving interstate commerce. *Home Corp.,* 415 P.3d at 38. "That is, the FAA applies if the contractual 'transaction affects or involves interstate commerce [such that] Congress could regulate the transaction through the Commerce Clause." *Asire*, 2020 WL 3884423 a *3 (*quoting Home Corp.,* 45 P.3d at 38)(alteration in original). The Commerce Clause covers three categories of activity: 1) the channels and instrumentalities of interstate travel, 2) goods or services that travel in interstate commerce, or 3) when the aggregate effect of

an activity may substantially affect interstate commerce. *Gonzales v. Raich,* 545 U.S. 1, 16 (2005). "What this means in the context of arbitration is that '[s]o long as 'commerce' is involved, the FAA applies.'" *Tallman v. Eighth Jud. Dist. Ct.*, 131 Nev. 713, 723 (2015).

While the United States Supreme Court has held that employment contracts may involve interstate commerce, *Circuit City Stores, Inc. v. Adams,* 532 U.S 105 (2001), this agreement is specifically not an employment contract. **Exhibit 1 at TELUS000103** ("This Agreement does not alter the at will status of my employment."); **TELUS000104** ("Neither this handbook, nor any other Company communication or practice, are intended to create an employment contract…"). The arbitration agreement is the only contractual provision within the entire handbook. It does not affect interstate travel, goods or services that travel in interstate commerce, and therefore, for the FAA to apply under Congress' powers to regulate commerce, the third prong must apply. *See U.S. v. Lopez,* 514 U.S. 549, 559 (1995). However, the underlying agreement merely covers Plaintiff's rights to bring grievances before a court, in no way does that affect commerce. In *Asire*, Judge Robert C. Jones found that such agreements, which cover only a limited interaction between an employee and an employer, do not fall under the Commerce Clause:

> As the underlying activity here was Plaintiff's employment and subsequent dismissal, only the third category is implicated. While the act of hiring and firing an employee could theoretically be considered "an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce," *United States v. Lopez*, 514 U.S. 549, 567 (1995), such a ruling would stretch the already expansive limits of Commerce Clause jurisprudence. *Asire*, 2020 WL 3884423 a *3

Further, the agreement limits the application to within the state where the employee was last employed. **Exhibit 1 at TELUS000102** at Arbitration Procedures. Accordingly, the effect of the contract is limited to the state in which Plaintiff was last employed and does not reach beyond the state of Nevada. There is nothing in or about the agreement itself which implicates interstate commerce, rendering the FAA inapplicable. Since the FAA is inapplicable, the Court

KANG & ASSOCIATES, PLLC.
6480 W SPRING MOUNTAIN RD., STE 1
LAS VEGAS, NV 89146

[14]

should apply Nevada law and invalidate the arbitration agreement as it lacks specific authorization to arbitration.

### D. Even if Plaintiff is Compelled to Arbitrate, Fees and Costs are Inappropriate

Defendant here has broadly accused undersigned counsel of obstructionism and acting in bad faith in opposing the arbitration provision. Undersigned counsel denies such meritless accusations, and the substance of the motion speaks for itself as to the genuine dispute which Plaintiff has asked to be resolved by this Honorable Court.

In making such an argument, Defendant and its counsel ignore the underlying back-and-forth related to this matter. The parties were able to permit the Defendant additional time to respond to the Complaint, not once, but twice. **Exhibit 4 – Correspondence Re: Extension of Time to Answer**. While undersigned counsel did request additional time to review the employee handbook, and speak with the Plaintiff regarding the same, the modest delay was only due to undersigned counsel's involvement in a two-week trial, Case No. A-21-833433-C, proceeding before the Eighth Judicial District Court. Trial commenced the day before Defendant first inquired about arbitration and concluded on December 13, 2024. Due to the scheduling, it was substantially difficult to find time to speak with the Plaintiff regarding the arbitration provision. Regardless, undersigned counsel acted diligently and promptly communicated with defense counsel. Defendant also ignores that Plaintiff offered to discuss its reasons for not stipulating to arbitration, which again, was conveniently omitted from the exhibits attached to Defendant's motion. **Exhibit 5 – Correspondence Re: Arbitration.**

Should the Court determine the agreement is enforceable, it is not demonstrative of any bad faith on behalf of Plaintiff or his counsel, but through the genuine resolution of ripe legal issues before this Court.

**IV.**

**CONCLUSION**

While public policy favors arbitration, unconscionable contracts are unenforceable. As the arbitration provision here is both procedurally and substantively unenforceable, it should be unenforceable. Alternatively, the Court should apply Nevada statues in the evaluating the arbitration provision and invalidate it pursuant to NRS 597.995. Plaintiff respectfully requests the Court deny Defendant's Motion in its entirety.

Dated this __30th__ Day of December, 2024.

KANG & ASSOCIATES, PLLC

/s/*Paul H. Wolfram, Esq.*
**PATRICK W. KANG, ESQ.**
Nevada Bar No.: 10381
**KYLE R. TATUM, ESQ.**
Nevada Bar No.: 13264
**PAUL H. WOLFRAM, ESQ.**
Nevada Bar No.: 16025
**KANG & ASSOCIATES, PLLC**
6480 West Spring Mountain Road, Suite 1
Las Vegas, Nevada 89146
P: 702.333.4223
F: 702.507.1468
*Attorneys for Plaintiff*

KANG & ASSOCIATES, PLLC.
6480 W SPRING MOUNTAIN RD., STE 1
LAS VEGAS, NV 89146

[16]

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of KANG & ASSOCIATES, PLLC., over the age of 18, neither a party to nor interested in this matter; that on this 30<u>th</u> day of December, 2024, I served a copy of **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL**, as follows:

    ___X___    by **electronic** filing notification where specified on the attached service list:

TO:   Z. Kathryn Branson Esq.
        LITTLER MENDELSON, P.C.
        3960 Howard Hughes Parkway, Suite 300
        Las Vegas, Nevada 89169
        *Attorneys for Defendant*

    _____    by **mailing** a copy thereof enclosed in a sealed envelope with postage prepaid in in the United States Mail at Las Vegas, Nevada, to the individual at the following address:

    _____    by **facsimile** transmission, pursuant to NRCP(5)(b) and EDCR 7.26, to the following fax number:

    */s/ Jhana Richardson*
    An Employee of KANG & ASSOCIATES

**KANG & ASSOCIATES, PLLC.**
6480 W SPRING MOUNTAIN RD., STE 1
LAS VEGAS, NV 89146

[17]